UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,           :
            Plaintiff,              :
                                    :
        v.                          :   3:04CR349(EBB)
                                    :
JAMES M. COREY,                     :
            Defendant.             :

RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the United States's Motion for Summary Judgment to Deny Ancillary Claims of Fred E. Corey and Pamela Lucy Corey Living Trust [Doc. No. 28]. Pursuant to FED.R.CIV.P. 56, Rule 56 of the Local Rules of Procedure for the District of Connecticut, the Court's June 2, 2005 Scheduling Order, and 21 U.S.C. § 853, the United States requests this Court deny the ancillary claims to forfeitable assets with respect to the following interests of the United States: 1) one 2001 BMW 330i automobile, VIN WBAAV53441JR79175, to the extent of the $43,306.54 purchase price; 2) one 2002 Audi A6 automobile, VIN WAULD64B02N137815, to the extent of $30,000.00 of the $39,002.35 purchase price; 3) 12,250 shares of Metalast stock and a minimum dollar amount of $441,000.00; and 4) the real property located at 4 Holley Lane, Prospect, CT to the extent of $1,056,292.95 paid toward the construction and purchase of the property (collectively "the Subject Assets"). Claimant Fred E. Corey asserts an ownership

interest in the Audi A6 automobile and the BMW 330i automobile. Claimant Pamela Lucy Corey Living Trust ("the Trust") claims a "pro-rata share of all forfeited property" with an interest in excess of $1,000,000.00, comprised of the proceeds of a medical malpractice settlement, social security checks, the proceeds from the sale of real property at 91 Scott Road, Prospect, Connecticut, and a life insurance policy taken out on the life of Joyce Corey on August 13, 1985 (the Primerica policy).  For the reasons set out below, the Court finds that there are no genuine issues of material fact, Claimants have not met their burden under FED.R.CRIM.P. 32.2 and 21 U.S.C. § 853(n), and summary judgment is GRANTED in favor of the United States.  The Preliminary Order of Forfeiture hereby becomes the Final Order of Forfeiture as provided in FED.R.CRIM.P. 32.2(c) and 21 U.S.C. § 853(n).

Background

The following facts are derived from the United States's Local Rule 56(a)1 Statement, the Affidavit of FBI Special Agent Thomas Provost and all attachments,[1] the November 22, 2004 Plea Agreement Letter, the Information to which the defendant, James M. Corey,

---

[1]The attachments to the Provost affidavit [Doc. No. 32] are as follows: Exh. 1A: Initial Webster Bank Account Spreadsheet; Exh. 1B: Initial First Union/Wachovia Account Spreadsheet; Exh. 2A: Proceeds Tracing Summary; Exh. 2B: Proceeds Tracing Spreadsheet: Webster Bank Account; Exh. 2C: Proceeds Tracing Spreadsheet: First Union/Wachovia Account; Exh. 2D: Proceeds Tracing Summary of Transfers To/From JP Morgan/Corpuz; Exh. 3A: August 1985 Primerica Policy Application; Exh. 3B: January 21, 1993 Primerica Policy Change Application; Exh. 3C: March 26, 1993 Primerica Policy Change Application.

pleaded guilty, the Preliminary Order of Forfeiture issued by this Court on January 18, 2005, Claimants' Local Rule 56(a)2 Statement and the Affidavit of Judy Brady, and do not represent factual findings of the Court.   James M. Corey, the defendant herein, pleaded guilty on December 1, 2004 to a one-count Information charging him with knowingly and willfully devising a scheme or artifice to defraud various insurance carriers and for obtaining money and property from those carriers by false and fraudulent pretenses, representations and promises through mail fraud from in or before June 1993 through in or about October 2001.   The Defendant caused the preparation of approximately 28 insurance applications for policies in the name of his sister, Joyce Corey, and caused such applications to include materially false and fraudulent information misstating, _inter alia_, his sister's medical history, criminal record and history of drug abuse, as well as misstating whether other insurance policies were in existence or were being sought on the life of Joyce Corey.   Additionally, the Defendant failed to correct information he knew to be false or otherwise made material omissions of facts he had a duty to provide.   Relying upon these misstatements, the insurers issued policies to Joyce Corey that they would not have otherwise issued or would not have issued upon the same terms.

Upon the death of Joyce Corey from a heroin overdose, the Defendant submitted claims for payment of the death benefits from the various insurers, continuing to misstate in some instances how many policies were outstanding on Joyce Corey's life and falsely describing the cause of death as "natural causes." Defendant caused a total of $2,409,266.04 in fraudulent death benefit payments to be issued. Defendant was not a named beneficiary on the policies, other than the Primerica policy, under which he was named contingent beneficiary, but he maintained access and control of the insurance proceeds and on certain occasions directed the use of such proceeds. The proceeds of the fraud were deposited and/or transferred primarily into two bank accounts: Webster Bank Account Number 90034451 ("Webster Bank account"), held in the name of the Pamela Lucy Corey Living Trust, and First Union/Wachovia Bank Account Number 300036342072 ("First Union/Wachovia account"), held in the name of the Frederick Edward Corey Living Trust.

More than $2.3 million in fraudulently-obtained death benefit payments were initially deposited in the Webster Bank Account. Some proceeds were then transferred directly to the First Union/Wachovia account, while other monies were transferred to intermediary accounts. Fraud proceeds in the Webster Bank account were commingled with substantial amounts of legitimate, non-forfeitable funds during the time period covered by the spreadsheet

4

summary of the account activity by the FBI Special Agent.[2]  The Special Agent prepared a second set of account spreadsheets to trace and clarify the extent to which the Subject Assets had been purchased with fraud proceeds.  Fraud proceeds were the only deposits to the First Union/Wachovia account during the time period covered by the spreadsheet summary of the account activity.[3]  The spreadsheets tracing the use of fraud proceeds to purchase the Subject Assets were prepared in accordance with the "lowest intermediate balance rule," discussed infra.

In the Plea Agreement, Defendant agreed to forfeit all interest in any mail fraud-related asset that Defendant owned at the time, previously had owned, or over which he had in the past exercised control, and any property that:

> "is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense, including but not limited to the following specific property:
> (a)  Certain real property located at 4 Holley Lane, Prospect, Connecticut, more fully described in Attachment A to this Plea Agreement;
> (b)  12,250 Shares of Metalast International Stock in the Name of Corey Investment Group;
> (c)  A 2002 AUDI A6, VIN WAULD64B02N137815;
> (d)  A 2001 BMW 330i, VIN WBAAV53441JR79175; and

---

[2]The spreadsheet summary of the Webster Bank account covers the period from June 2, 2000 through November 13, 2003.  See Provost Affidavit Exhs. 1A, 2B.

[3]The spreadsheet summary of the First Union/Wachovia account covers the period from November 21, 2001 through November 8, 2002. See Provost Affidavit Exhs. 1B, 2C.

> (e)   A 2000 CHEVROLET BLAZER, VIN 1GNDT13W0Y2400274.[4]
> (f)   Any death benefits paid as a result of the
>       scheme set forth in Count One that did not
>       result in the purchase of the assets or
>       securities outlined in (a)-(e), <u>supra</u>."

<u>United States v. James M. Corey</u>, No. 3:04CR349(EBB), Plea Agreement
[Doc. No. 3].  In the Stipulation of Offense Conduct section of the
Plea Agreement, Defendant stipulated to the language of the
Information, stating, <u>inter alia</u>, that he caused the preparation of
approximately 28 insurance applications for life insurance policies
in the name of Joyce Corey.  Attachment A to the Plea Agreement
lists each of the 28 policies, and for each lists the date of the
insurance application, the policy amount, the death benefit paid,
the premiums paid, the date each death benefit check was issued,
and the loss to each insurance company from the scheme.  <u>See</u> Plea
Agreement, Attachment A.  This listing includes the Primerica Life
Insurance Company policy for which an application was submitted on
August 13, 1985 by insurance agent Joseph Giordano, and for which
two separate policy change applications were submitted by Defendant
in his capacity as an insurance agent, the first dated January 21,
1993 and the second dated March 26, 1993.  Defendant stipulated
that the total loss caused by his fraudulent conduct included the
entire $150,000.00 death payment from Primerica.  All of the

---

[4]The 2000 Chevrolet Blazer is not addressed in the Government's motion or in
this ruling as the Government has reached an agreement regarding the
disposition of this asset with claimant Margaret C. Luddy.

insurance policy applications, including the 1985 Primerica policy application[5] and the two subsequent policy change applications, contained false statements.

Defendant was sentenced on February 15, 2005 to serve 24 months in prison and three years on supervised release, to pay restitution of $2,409,266.04 and a special assessment of $100.00, and to forfeit all of the Subject Assets plus the additional fraud proceeds amount.

Claimant Pamela Lucy Corey Living Trust asserts an interest in the Webster Bank Account to the following extent:  the May 26, 2000 opening deposit to the account of $750,033.75, representing proceeds from the settlement of a medical malpractice lawsuit; the December 5, 2001 deposit of $85,140.03, representing further payment from the malpractice action; social security payments to Pamela Corey; an April 1, 2003 deposit of $50,000.00, representing monies received by Pamela Corey from the sale of her interest in the real property at 91 Scott Road, Prospect, Connecticut; and the death benefit payment from the 1985 Primerica policy.  Affiant Judy Brady asserts that at the time of the 1985 insurance policy on

---

[5]Three false statements were contained in the August 1985 Primerica policy application.  The "no" box was checked in response to the following three questions: whether Joyce Corey had ever used heroin, morphine or other narcotic drugs; whether she had ever been treated for or had any known indication of excessive use of any habit-forming drugs; and whether she had, within the past 5 years, been a patient in a hospital, clinic, sanatorium, or other medical facility.

the life of Joyce Corey, Joyce was independent, capable of making representations on her own.  Petitioners further assert that James M. Corey acted as trustee for the Pamela Lucy Corey Living Trust, had sole control over all the funds in the Trust and that he victimized the Trust.  Affiant Judy Brady also asserts that Pamela Corey has been mentally ill and diagnosed with manic depression for approximately forty years, and that, as a result of medical malpractice, she was rendered an invalid, incapable of speaking or walking.  Pamela Corey, due to her physical and mental incapacity, would have had no way of knowing that James M. Corey deposited funds into the Trust or that she was victimized by Defendant.

Petitioner Fred E. Corey asserts an ownership interest in the 2002 Audi A6, to which he acquired title on or about July 16, 2002, and the 2001 BMW 330i, to which he acquired title on or about October 31, 2000.  Fred E. Corey believes that the monies utilized to purchase the subject assets came from the medical malpractice settlement funds which were deposited in the Pamela Lucy Corey Living Trust.  Fred E. Corey also asserts that $50,000.00 from the sale of the real property at 91 Scott Road, Prospect, Connecticut, was deposited in the First Union/Wachovia Bank Account on April 2, 2003 in the name of Frederick Edward Corey Living Trust, also

controlled by James M. Corey.[6]  Judy Brady asserts that her father, Fred E. Corey, would not have been capable of knowing what James M. Corey was doing with the account.

Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); accord <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  The evidence of the non-moving party is to be believed, and "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962); <u>Anderson</u>, 477 U.S. at 255. The non-movant may not rest upon the mere allegations or denials of his pleading, and "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>see</u> FED. R. CIV. P. 56(e).  Instead, the non-moving party "must offer some hard evidence showing that its version of the

---

[6]Whether $50,000.00 was deposited into the Wachovia account on this date is immaterial as the time period covered by the fraud proceeds tracing spreadsheet for the Wachovia Account only covers the period from November 21, 2001 through November 8, 2002.  <u>See</u> Provost Affidavit Exh. 2C.

events is not wholly fanciful." D'Amico v. City of New York, 132
F.3d 145, 149 (2d Cir. 1998).  The "mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement is
that there be no *genuine* issue of *material* fact." Anderson, 477
U.S. at 247-48 (emphasis in original).  "Where the record taken as
a whole could not lead a rational trier of fact to find for the
non-moving party, there is no genuine issue for trial."
Matsushita, 475 U.S. at 587.  "As to materiality, the substantive
law will identify which facts are material.  Only disputes over
facts that might affect the outcome of the suit under the governing
law will properly preclude the entry of summary judgment.  Factual
disputes that are irrelevant or unnecessary will not be counted."
Anderson, 477 U.S. at 248.  "[I]t is the substantive law's
identification of which facts are critical and which facts are
irrelevant that governs." Id.  Where the nonmoving party "fails to
make a showing sufficient to establish the existence of an element
essential to that party's case. . . . there can be 'no genuine
issue as to any material fact,' since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial." Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986).  "Whether a claimant opposing
forfeiture has succeeded in raising [a genuine issue of material

fact] must be determined in the context of the peculiar procedural requirements of the forfeiture laws." United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th Street, New York, New York, 901 F.2d 288, 290 (2d Cir. 1990) (citation and quotation marks omitted).

Applicable Law

    Third party Claims

    Third party ancillary claims to forfeitable property in a criminal prosecution are resolved under procedures established by FED.R.CRIM.P. 32.2(c) and 21 U.S.C. § 853(n).  Under Rule 32.2(c), "[i]f, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding . . . ."  FED.R.CRIM.P. 32.2(c)(1).  The criminal forfeiture statute provides as follows:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

21 U.S.C. § 853(n)(2).  Once a third party has followed these procedures to assert an interest in the property to be forfeited as part of any criminal sentence, the Court "may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason."  FED.R.CRIM.P. 32.2(c)(1)(A).  For

11

purposes of a motion under this Rule, the facts as set forth by the third party claimant are assumed to be true.  Id.  Once the Court has disposed of any motion under Rule 32.2(c)(1)(A), the Court "may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56." FED.R.CRIM.P. 32.2(c)(1)(B). Thus, if the Court determines that discovery is not necessary, a party may move forthwith for summary judgment.

Furthermore, FED.R.CIV.P. 12(b) provides that, if, in a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment" to be addressed pursuant to FED.R.CIV.P. 56.

Under the criminal forfeiture statute, the United States's interest in forfeitable property "relates back" to the commission of the criminal act.  "All right, title, and interest in property [subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 853(c).  See also United States v. McCorkle, 143 F. Supp. 2d 1311, 1329 (M.D. Fla. 2000).  To meet its burden under 21 U.S.C. § 853(n), a third party claimant must establish by

a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant *at the time of the commission of the acts which gave rise to the forfeiture* of the property under this section; or
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6) (emphasis added).

Thus, under the criminal forfeiture statute, a claimant must show, by a preponderance of the evidence, that, at the time of the commission of the criminal acts, he had superior right, title or interest in the property, or that he was a bona fide purchaser for value and was reasonably without cause to believe the property was forfeitable at the time of purchase. Id. The Court is directed to consider relevant portions of the record of the criminal case which resulted in the forfeiture order. See 21 U.S.C. § 853(n)(5).

Claims Regarding Commingled Funds

In United States v. Banco Cafetero Panama, 797 F.2d 1154 (2d Cir. 1986), the Second Circuit Court of Appeals held that, where forfeitable funds have been commingled with legitimate funds in the same bank account, Congress explicitly recognized that the forfeiture statute could reach the criminal proceeds. Id. at 1159.

13

The Banco Cafetero Court discussed three possible approaches to establishing a "traceable connection" between forfeitable funds and a credit balance in an active account comprised of commingled funds: 1) the lowest intermediate balance rule ("drugs-in, last-out" rule); 2) the averaging rule (pro rata share rule);[7] and 3) a "drugs-in, first-out" rule.  Id.  The Banco Cafetero Court agreed with the Government that either the "drugs-in, last-out" approach or the "drugs-in, first-out" approach would be appropriate to trace forfeitable funds out of the commingled funds and into the assets sought to be forfeited.  The Court left the choice of which of these approved methods to use to the Government.  "Which approach reflects reality in any particular case will depend on the precise circumstances."  Id. at 1160.  "[F]ew cases will present facts that neatly match untainted deposits with withdrawals, and the real question therefore becomes which side bears the risk of the inevitable uncertainty that will arise in most cases.  Congress has answered that question in the Government's favor by assigning it a lenient burden of proof in obtaining forfeiture of 'traceable proceeds'. . . ."  Id.  See also In Re Moffitt, Zwerling & Kemler, P.C., 875 F. Supp. 1152 (E.D.Va. 1995), *aff'd in part and rev'd in*

---

[7] "A second approach is to consider traceable proceeds to be a pro rata share of any withdrawal from the account or of any asset purchased with such withdrawal, the share determined by the ratio of the $100 tainted deposit to the funds in the account immediately after the deposit."  Banco Cafetero, 797 F.2d at 1159.

*part on other grounds*, 83 F.3d 660 (4th Cir. 1996), *cert. denied*, 519 U.S. 1101 (1997) ("when tracing commingled funds, the government is accorded flexibility to choose among various accounting approaches").  The <u>Banco Cafetero</u> Court noted that it did not consider whether the averaging rule was appropriate because the Government did not request that it be allowed to use that approach.  <u>Id.</u> at 1159 n.6.

The Second Circuit provided the following illustration of the lowest intermediate balance rule ("drugs-in, last-out"): "If $100 from a drug sale is deposited into an active account, one approach is to consider the account to be 'traceable proceeds' to the extent of $100 as long as the account balance never falls below that sum." <u>Id.</u> at 1159.  Subsequent deposits of legitimate funds added to the account after the balance falls below $100 are immune from seizure. <u>Id.</u> n.5.  However, if additional fraud-related deposits are made after the account first "zeroes out," the lowest intermediate balance rule does not prevent their forfeiture.  <u>Moffitt</u>, 875 F. Supp. at 1160.

Alternatively, under the "drugs-in, first-out" rule, any one withdrawal, or any asset purchased with such a withdrawal, to the extent of $100 is considered "traceable proceeds." <u>Banco Cafetero</u>, 797 F.2d at 1159.  <u>See also</u> <u>United States v. One Parcel of Real Property with Buildings, Appurtenances and Known as 170 Westfield</u>

Drive, Located in the Town of East Greenwich, Rhode Island, 34 F. Supp. 2d 107, 117 (D.R.I. 1999) (the "'drugs in-first out' theory . . . taints withdrawals and assumes the criminal left the legitimate money in the account") (citation omitted).

As the Second Circuit held, under either the "drugs-in, last-out" rule or the "drugs-in, first-out" rule:

> In almost all cases, once the Government has shown probable cause to believe that a person has sold drugs and has deposited the proceeds of a drug sale into a bank account, there will be probable cause to believe that the bank account contains 'traceable proceeds' of the sale (if the balance has not fallen below the amount of the deposit) *and* probable cause to believe that a withdrawal contains such 'traceable proceeds' (if the withdrawal exceeds the deposit).  The burden will then be on the claimant to demonstrate that no portion of the account or no portions of the withdrawal, depending on which the Government pursues, are 'traceable proceeds.'

Banco Cafetero, 797 F.2d at 1160-61.

While the forfeiture action in Banco Cafetero was pursuant to the civil forfeiture statute, the tracing analysis there has been found appropriate with regard to the criminal forfeiture statute, 21 U.S.C. § 853.  See e.g. Moffitt, 875 F. Supp. 1152.

Forfeiture of Stock

The Second Circuit has not addressed the extent to which shares of stock are forfeitable when purchased with forfeitable funds.  However, the Eighth Circuit had held that, where forfeitable proceeds are traced into the purchase of shares of

16

stock, the United States's forfeitable interest equals the dollar amount of such proceeds traced into the actual shares, plus any appreciation in the value of the shares.  See United States v. Hawkey, 148 F.3d 920, 928 (8th Cir. 1998).  If the stock price has fallen below the purchase price, the United States is then entitled to the shares of stock remaining plus substitute assets equal to the depreciation.  "The victim of the misappropriation should not bear the burden of [Defendant's] choice of investment."  Id.

Discussion

This Court issued a Preliminary Order of Forfeiture on January 18, 2005, ordering James M. Corey to forfeit the Subject Assets plus a money judgment for the balance of the fraud proceeds [Doc. No. 11].  The Court's Order, consistent with 21 U.S.C. § 853(n), mandated that any person claiming an interest in the forfeited property must file a petition with the Court within 30 days of the final publication of notice of the Preliminary Order of Forfeiture, or receipt of actual notice, whichever would be earlier.  James M. Corey was sentenced on February 15, 2005.  As per the Preliminary Order of Forfeiture, notice was published in the Hartford Courant on three dates, February 17, 2005, February 24, 2005 and finally on March 3, 2005.

Claimants Fred E. Corey and Pamela Lucy Corey Living Trust each filed a petition requesting a hearing to adjudicate their

interest in the forfeited assets on April 14, 2005. See Doc. Nos. 24 and 26. Claimants did not file their petitions within 30 days of final publication of notice, as prescribed by statute and as ordered by this Court, and thus, under FED.R.CRIM.P. 32.2(c)(2) this Court could have entered a final order of forfeiture once the thirty-day period expired on April 2, 2005. However, this Court received notice from the parties that they were in agreement regarding an ancillary proceeding, and the Court issued a scheduling order based upon the parties' agreement that the ancillary proceeding would be resolved through the Government's filing of a motion for summary judgment.

In their Local Rule 56(a)2 Statement, Claimants set forth two disputed issues of material fact which, they assert, preclude this Court from granting summary judgment in favor of the United States. Claimants first assert that it is a disputed material fact as to whether they were victims of James M. Corey, along with the insurers, and accordingly should be given a pro rata share of the forfeited assets. Claimants also assert that an issue of material fact exists as to whether the Banco Cafetero analysis used by the Government is appropriate here, where Defendant "commingled funds which belonged to a person who was then and there incompetent." Claimants' Local Rule 56(a)2 Statement (pages unnumbered). Claimants have asserted an interest in the Subject Assets – the

18

2001 BMW automobile, the 2002 Audi automobile, 12,250 shares of Metalast International Stock in the name of the Corey Investment Group, the real property at 4 Holley Lane, Prospect, Connecticut, and in $100,000.00 of the death benefit payment arising from the Primerica life insurance policy taken out on the life of Joyce Corey on August 13, 1985.

Even if this Court assumes the facts as put forth by Claimants to be true and draws all inferences in Claimants' favor, as it must for purposes of the Motion, Claimants have not offered "hard evidence showing that [their] version of the events is not wholly fanciful." D'Amico, 132 F.3d at 149.  Assuming as true that James M. Corey victimized Fred E. Corey and the Pamela Lucy Corey Living Trust, and was responsible for the withdrawal of most of the legitimate, non-forfeitable funds from the accounts, including the proceeds from the medical malpractice settlement, the proceeds from the sale of the real property at 91 Scott Road, Prospect, Connecticut, and the Social Security deposits, all amounting to approximately $885,000.00, the analysis would not change with regard to the Subject Assets and such victimization would not lead this Court to order a pro rata share in the Subject Assets be given to Claimants.  As the Second Circuit held in Banco Cafetero, it is

the Government's choice,[8] on a case by case basis, to use either the drugs-in, last-out method, or the drugs-in, first-out method to trace forfeitable assets through an account which has fraud proceeds commingled with legitimate, non-fraud deposits.

As is made clear in the spreadsheets attached to the Provost Affidavit, the Government, following the asset tracing rules in Banco Cafetero, traced only fraud proceeds into the Subject Assets.[9]   Neither the medical malpractice award, the social security checks nor the proceeds from the sale of real property at 91 Scott Road, Prospect, Connecticut were counted in the running "fraud balance" through which the Subject Assets were traced.  See Provost Affidavit, Exhs. 1A, 1B, 2A, 2B, 2C.  Therefore, the only proceeds in which Claimants assert an interest that were traced into the Subject Assets were the proceeds from the 1985 Primerica policy.  As discussed infra, Claimants cannot assert any superior right, title or interest in the Primerica policy, as all rights vested in the United States at the time of the commission of the acts which gave rise to the forfeiture.   See 21 U.S.C. §

---

[8]The Claimants' Memorandum of Law in Opposition acknowledges that the "Court in Banco Cafetero concluded that the Government was entitled to utilize at its option, the 'lowest intermediate balance' rule or the 'drugs[-] in, first[-] out' rule to trace illegal proceeds . . . ."  Claimants' Opposition at 10.

[9]Approximately $800,000.00 in additional fraud proceeds also passed through these accounts and could not be traced into identifiable assets.  See Government's Memorandum of Law at 6 n.4.

853(n)(6).[10]   As is evident from Exhibit 1A to the Provost Affidavit, the spreadsheet listing all the deposits and withdrawals on the Webster Bank account from May 26, 2000 through November 13, 2003, withdrawals ranging from $9,000.00 to $9,700.00 were made a few times per month beginning in July of 2000, only two months after the account was opened with the medical malpractice proceeds. None of these withdrawals were traced into any asset.  By August 17, 2001 only $252.05 remained in the balance of the Webster Bank account.   Exhibit 2B to the Provost Affidavit shows how the Government followed the tracing rules established in Banco Cafetero to trace withdrawals of fraud proceeds into the purchase of the 2001 BMW 330i, the real property at 4 Holley Lane and the Metalast stock.   In calculating the fraud balance the Government included only the deposits of insurance policy payments, not the deposit of legitimate funds.[11]   Claimants contend that the Government's

---

[10]As James M. Corey stipulated, he caused the preparation of the 1985 Primerica application and thus title, right and interest vested in the United States in 1985.

[11]Illustrative of this is the following calculation: the Government began to calculate a running "fraud balance" in the Webster Bank account with the first forfeitable deposit, the death benefit check for $76,599.49 issued by Primerica to Pamela Corey.  Thus, on June 2, 2000, the account balance was $817,417.78, while the fraud balance was $76,599.49.  A check for $45,306.54 was drawn on the account on October 31, 2000 to purchase the 2001 BMW 330i, leaving a fraud balance of $31,292.95.  $45,306.54 from the fraud balance was traced into the BMW purchase.  See One Parcel of Real Property, 34 F. Supp. 2d at 117 (the "'drugs-in, first-out' theory . . . taints withdrawals and assumes the criminal left the legitimate money in the account").  On January 26, 2001, a check for $4,900.00 was drawn on the Webster account, payable to Pavlik Realty toward the purchase of 4 Holley Lane.  The fraud balance was then $26,392.95.  Subsequently, on April 2, 2001, a check for $75,000.00 was drawn

application of the lowest intermediate balance rule "ignores over $1,000,000.00 . . . of legitimate commingled proceeds of Pamela and Fred Corey, the innocent victims."[12]  <u>See Claimants' Memorandum of Law in Opposition to the United States of America's Motion for Summary Judgment</u>.  This is precisely the point of the <u>Banco Cafetero</u> tracing rules – the legitimate funds are ignored in the fraud balance calculations.  Thus, even if James M. Corey victimized the Trust and Fred E. Corey, it is immaterial to the fraud balance calculation and tracing into the Subject Assets. Thus, the dispute here is not over whether Claimants were victimized, but only over whether it is fair that, even if they were victimized, the Government be allowed to trace the fraudulent

---

on the account, also payable to Pavlik Realty toward the purchase of 4 Holley Lane.  However, since the fraud balance on April 2, 2001 was only $26,392.95, the "lowest intermediate balance," that was the actual amount traced into the purchase of 4 Holley Lane, not the entire $75,000.00 check which was presumably comprised of $48,607.05 in legitimate funds.  As of April 2, 2001 the fraud balance in the Webster Bank account "zeroed out," and no additional fraud proceeds were deposited until August 23, 2001, when a death benefit check from Guardian Life brought the fraud balance back up to $78,076.52.  As of this same date, the account balance went from $252.05 to $78,328.57.  <u>See</u> Provost Affidavit, Exhs. 1A and 2B.[^]

[^] Exh. 2B lists the account balance as $78,328.67; this is a typographical error. The correct amount of $78,328.57 is listed in the spreadsheet at Exh. 1A.

[12]Claimants also argue that an innocent owner defense analysis is appropriate in this case, citing to a civil forfeiture case in the District of Hawaii. <u>See</u> Memorandum in Opposition at 8.  The innocent owner defense is a component of the civil forfeiture statute, a statute under which the Government is <u>not</u> proceeding in this criminal forfeiture action under 21 U.S.C. § 853. Therefore, the analysis is inappropriate.  <u>See</u> <u>e.g.</u> <u>United States v. Jimerson</u>, 5 F.3d 1453, 1455 and n.4 (11th Cir. 1993) (21 U.S.C. § 853 "does not contain an innocent owner provision; as a result, ... alleged innocence, standing alone, cannot defeat the Government's interest in criminally forfeited property").

proceeds through to the Subject Assets.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson</u>, 477 U.S. at 248.  Under the law of this Circuit, the Government's tracing analysis is appropriate.

Furthermore, Claimants' own Rule 56 admissions belie their assertions that genuine issues of material fact remain.  Claimants have specifically <u>admitted</u> the assertions contained in ¶ 1 - 10, 12 - 15, and 17 - 19 of the United States's Local Rule 56(a)1 Statement.  <u>See</u> Claimants' Local Rule 56(a)2 Statement.  Paragraphs 6 - 13 of Plaintiff's Rule 56 statement describe and incorporate by reference the Information and the Plea Agreement Letter, and describe the scheme which embraced 28 insurance policy applications.  Plaintiff's paragraph 13 states, in relevant part:

> In entering his guilty plea, the Defendant stipulated that the fraudulent acts for which he bore criminal responsibility included the 1985 Primerica Policy, not just the 1993 Policy Change Application. . . . Also, the Defendant stipulated that the total losses caused by his fraudulent conduct included the entire $150,000 death benefit payment on the Primerica policy, not just the $50,000 increase from the 1993 Policy Change Application.

Plaintiff's Local Rule 56(a)1 Statement at 6.  Claimants have specifically admitted the assertions in paragraph 13.

Additionally, ¶ 15 of Plaintiff's Rule 56 statement notes that "more than $2.3 million in fraudulently-obtained death benefit proceeds were initially deposited in the Webster Bank account" and that "fraud proceeds in both the Webster Bank Account and First Union/Wachovia accounts were disbursed to purchase various assets." Again, Claimants have specifically admitted these assertions.  See Claimants' Rule 56 statement ¶ 15 (pages unnumbered).  Paragraphs 17 - 19 of Plaintiff's Rule 56 statement explain the accounting methodology used by the Government to establish a "traceable connection" from forfeitable funds to specific assets purchased with those funds – the Subject Assets.[13]  Paragraph 17 explains the "lowest intermediate balance rule" while ¶ 18 explains the proceeds tracing spreadsheets developed "[c]onsistent with the prescribed rule" summarized in ¶ 17, noting specifically how the government

[13]Special Agent Provost developed a set of spreadsheets based upon the "lowest intermediate balance rule."  Claimants have admitted the assertions in the Government's paragraph 17, which states in relevant part:
1.  If X amount of criminal proceeds are deposited in an account; the account balance then dips below X to amount Y; the balance then goes back up to X or more; but no more criminal proceeds are deposited in the account: then the amount of forfeitable proceeds remains only Y, which was the lowest intermediate balance of criminal proceeds.
2. If an account contains X amount of forfeitable proceeds plus at least X amount of non-forfeitable funds; and the defendant then withdraws X amount of proceeds to purchase several assets, leaving at least X amount of money still in the account: then the United States may choose from any of the following ways to forfeit X amount of proceeds: (a) forfeit all assets purchased with X amount of funds; (b) forfeit X amount of money from the account; or (c) forfeit a combination of some purchased assets and money from the account, so long as the total forfeited amount does not exceed X.
Plaintiff's Local Rule 56(a)1 Statement at 8.
     The Court notes that this summary, and the resulting calculation used by the Government, encompasses both the drugs-in, last-out rule and the drugs-in, first-out rule.

calculated the account balance and the fraud balance – which "defined the maximum amount of forfeitable proceeds that could be traced through a disbursement into a particular asset sought to be forfeited." The resulting calculation led to the following results:

| Asset | Total forfeitable proceeds traced into asset |
|-------|---------------------------------------------|
| 2001 BMW 330i | $45,306.34 |
| 2002 Audi A6 | $30,000.00 |
| 12,250 shares of Metalast Stock | $441,000.00 |
| 4 Holley Lane, Prospect, CT | $1,056,292.95 |

United States's Local Rule 56(a)1 Statement ¶ 18.

Thus, having specifically admitted to the fact that James M. Corey's fraud encompassed the 28 life insurance policy applications, including the 1985 Primerica policy, and to the appropriateness of the Government's analysis, Claimants cannot also assert that an issue of material fact exists as to whether the Banco Cafetero analysis used by the Government is appropriate here, where Defendant "commingled funds which belonged to a person who was then and there incompetent." See Claimants' Local Rule 56(a)2 Statement (pages unnumbered). Furthermore, there is no case law in this Circuit that commands a different methodology be used to establish a traceable connection between forfeitable funds and

specific assets where such funds were commingled with the funds of an incompetent person.

And, finally, Claimants have failed to meet their burden under 21 U.S.C. § 853(n). As noted supra, all right, title and interest in property subject to criminal forfeiture vests in the United States upon the commission of the acts giving rise to the forfeiture under 21 U.S.C. § 853(c). Thus, Claimants have the burden of demonstrating that their right, title or interest in the Subject Assets existed before the scheme to which Defendant James M. Corey pleaded guilty took place. Claimants cannot do this because the Subject Assets all were purchased after the commission of the crime. Claimant Fred E. Corey asserts that he acquired right, title and interest in the 2002 Audi on or about July 16, 2002, and right, title and interest in the 2001 BMW on or about October 31, 2000. Claimant Pamela Lucy Corey Living Trust claims a pro rata share of all forfeited property, asserting an interest in excess of $1,000,000.00 in the deposits of the Webster Bank Account. The remaining Subject Assets – the Metalast stock and the real property located at 4 Holley Lane, Prospect, Connecticut, were purchased years after the scheme to which James M. Corey pleaded guilty began (in or before June 1993). Defendant stipulated that the fraudulent acts for which he bore criminal responsibility included the 1985 Primerica policy application, not just the 1993

Policy Change applications.  As noted _supra_, Claimants have admitted this in their Rule 56 Statement.  The Primerica policy proceeds also vested in the United States at the time of the crime, and Claimants cannot show right, title or interest in the policy. Where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case. . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." _Celotex_, 477 U.S. at 322-23.

Conclusion

The Court is sympathetic to Claimants and, while it is unfortunate that Pamela Corey was unaware of the actions of her son, this is not the forum in which to address such victimization, which, if it did occur, was a crime separate from that to which Defendant pleaded guilty.

This Court finds that no genuine issue of material fact remains.  Having found that Claimants admitted to the appropriateness of the Government's forfeiture calculation methodology and having found that Claimants have failed to meet their burden under 21 U.S.C. § 853 to show superior right, title or interest in the Subject Assets, this Court GRANTS Plaintiff United States's _Motion for Summary Judgment to Deny Ancillary Claims of_

Fred. E. Corey and Pamela Lucy Corey Living Trust [Doc. No. 28].
The Preliminary Order of Forfeiture hereby becomes the Final Order
of Forfeiture as provided in FED.R.CRIM.P. 32.2(c) and 21 U.S.C. §
853(n).

SO ORDERED.

_____
ELLEN BREE BURNS, SENIOR JUDGE
UNITED STATES DISTRICT COURT

Dated at New Haven, CT, this _____ day of May, 2006.

28